

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
**(973) 645-6340**

**WILLIAM J. MARTINI**
    **JUDGE**

# LETTER OPINION

March 23, 2009

James Langton
Langton & Alter, Esqs.
2096 St. Georges Avenue
P.O. Box 1798
Rahway, NJ 07065
(*Attorneys for Plaintiff Patricia Martin*)

Kimberly L. Schiro
Michelle Lynn Christ
Office of the General Counsel
26 Federal Plaza
Room 3904
New York, NY 10278
(*Attorney for Defendant Commissioner of Social Security*)

    Re:   <u>Martin v. Commissioner of Social Security</u>
           <u>Civil Action No. 2:08-CV-03626 (WJM)</u>

Dear Counsel:

    Plaintiff Patricia Martin brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act, seeking a review of a final determination by the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court did not hold oral argument. Fed. R. Civ. P. 78. For the following reasons, the Commissioner's decision is **AFFIRMED**.

## BACKGROUND AND PROCEDURAL HISTORY

Since the parties are familiar with the procedural history and facts of this case, the Court will recount the events in summary fashion. Plaintiff filed an application for DIB and SSI on October 10, 2000, alleging a disability based on back pain, knee pain, obesity, and depression since January 1, 2000. (R. 83-85.) She was denied initially and upon reconsideration. On April 26, 2002, Administrative Law Judge ("ALJ") Dennis O'Leary determined that Plaintiff was not disabled. (R. 9-20.) The ALJ found that Plaintiff's obesity and bilateral knee arthritis constituted severe impairments. (R. 15-16.) He also found that Plaintiff's depression and back-pain were non-severe. (*Id*.) Based on these impairments, the ALJ concluded that Plaintiff retained the residual functioning capacity ("RFC") to return to her past relevant work experience. The Appeal Council affirmed the ALJ's decision on October 4, 2002. (R. 3-4.)

Plaintiff sought review in federal court. On August 5, 2004, the Honorable William H. Walls found that Plaintiff's depression constituted a severe impairment and that the ALJ improperly weighed the medical records of two examining psychologists. (R. 290-91, 293.) Since the ALJ did not consider how depression impacted Plaintiff's RFC and her ability to perform past relevant work, Judge Walls remanded the matter for further consideration. (R. 294.)

Following remand, the ALJ issued a second decision denying benefits. The ALJ determined on April 4, 2005 that Plaintiff's back pain, knee pain, obesity, and depression constituted severe impairments, but not severe enough to meet or medically equal, either singly or in combination, any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix I (the "Listings"). (R. 276.) The ALJ also determined that Plaintiff's hypertension and headaches were non-severe. (*Id*.) The ALJ adjudged that Plaintiff retained the RFC to perform simple, repetitive work at the sedentary exertion level, subject to moderate limitations in social functions and concentration. Based on this RFC, Plaintiff could not perform her past relevant work. (R. 279, 282.) At step five, the ALJ relied upon the testimony of a vocational expert ("VE"), who stated that 50,000 jobs existed in the national economy for someone with Plaintiff's RFC. (R. 280-81.) The ALJ thus concluded that Plaintiff was not disabled. (R. 281, 283.)

Approximately three years later, on May 29, 2008, the Appeals Council affirmed this decision. (R. 255-57.) On July 18, 2008, Plaintiff filed the present action.

## DISABILITY EVALUATION

A reviewing court must affirm an ALJ's decision if based on the correct legal standard and if the factual findings are supported by substantial evidence from the record.

42 U.S.C. §§ 405(g), 1383(c)(3); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008) (citations omitted).

The Social Security Administration employs a five-step process to determine whether an applicant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner inquires into whether the claimant engaged in substantial gainful activity since his or her alleged disability onset date. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner evaluates whether the claimant's impairment or combination of impairments qualify as "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant possesses a severe impairment, the Commissioner questions whether the impairment meets or equals the criteria of an impairment found in the Listings. If so, the claimant automatically receives benefits. If not, the Commissioner proceeds to step four. *Id.* §§ 404.1520(d), 416.920(d). In step four, the Commissioner considers whether, despite the severe impairment, the claimant retains the RFC to perform past relevant work. *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the ultimate burden of establishing steps one through four. At step five, the burden shifts to the Social Security Administration to show that the claimant has the capability–in light of the claimant's age, education, work experience, and RFC–to perform other jobs that exist in significant numbers in the national economy. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

## DISCUSSION

On appeal, Plaintiff contends that the ALJ erred in several respects. First, the ALJ failed to consider Plaintiff's obesity during the five-step sequential analysis as required by Social Security Ruling ("SSR") 02-1p. Second, the ALJ improperly rejected medical evidence from Dr. Melvin Bernstein for purposes of steps four and five. Dr. Bernstein opined that Plaintiff had limited ability to follow directions and difficulty performing simple tasks.

**A.    The ALJ Properly Considered Plaintiff's Obesity**

Pursuant to SSR 02-1p, an ALJ must consider a claimant's obesity throughout the disability evaluation process.[1] When assessing a claimant's RFC, an ALJ must evaluate

---

[1] Specifically, the court must consider in light of a claimant's obesity: (1) whether the individual has a medically determinable impairment; (2) whether the impairment is severe; (3) whether the impairment meets or equals the requirements of a listed impairment; and (4) whether

3

the "effect obesity has upon the [claimant's] ability to perform routine movement and necessary physical activity within the work environment" as the "combined effects of obesity with other impairments may be greater than might be expected without obesity." SSR 02-01p, 2000 WL 628049, at *6.

Here, the ALJ weighed Plaintiff's obesity at each step of the process. Although not explicitly stated in his official findings,[2] the ALJ concluded, for purposes of step two, that "[t]he medical evidence indicates that the claimant has pain in her back and knees, *obesity*, and depression, impairments that are 'severe' within the meaning of the Regulations . . . ." (R. 276) (emphasis added.)

In step three, the ALJ cited SSR 02-1p and determined that Plaintiff's weight along with her other impairments, singly or in combination, did not meet or equal any of the impairments found in the Listings. (R. 277.) The ALJ concluded that Plaintiff could ambulate effectively. He relied on the medical evidence of Dr. Joyce Nkwonta, who opined that Plaintiff did not need an assistive device to walk. (R. 210, 215.)

Moreover, the ALJ considered whether Plaintiff's orthopedic condition, when viewed in combination with her obesity, would satisfy any of the Listings. The ALJ found that this was not the case, citing the testimony of Dr. Marvin Fechner. (R. 277.) Dr. Fechner stated that Plaintiff only suffered from slight degenerative changes, as evidenced by an X-ray of Plaintiff's knees. (R. 393). He also noted that Plaintiff's nearly 100 pound weight loss "possibly" improved her ability to function. (R. 402-03.)

At step four, the ALJ incorporated Plaintiff's obesity when evaluating the opinions of Dr. C. Oti and Dr. Fechner. Dr. Oti, a treating physician, diagnosed Plaintiff with morbid obesity and osteoarthritis secondary to obesity. (R. 201.) Dr. Oti opined that Plaintiff's obesity imposed limitations on her ability to stand and walk "for long periods"

---

the impairment prevents the claimant from performing her past relevant work or other work in the national economy. SSR 02-01p, 2000 WL 628049, at *3.

[2] The ALJ neglected to mention Plaintiff's obesity in his official findings, only declaring Plaintiff's back pain, knee pain, and depression "severe." In Finding No. 3, the ALJ stated:

> The claimant's back pain, pain in both knees, and depression are considered 'severe' based on the requirements in the Regulations. The claimant's headaches and hypertension have no more than a minimal affect on her ability to perform basic work activities and are therefore "non-severe" impairments.

(R. 282.) As described below, this is contradicted by the rest of his opinion.

4

of time, as well as climb or stoop. (*Id.*) Dr. Fechner testified that Plaintiff's weight and mild arthritis in her knees limited Plaintiff to lifting ten pounds occasionally, sitting for six hours in an eight hour day with normal breaks, and standing and walking for two hours in an eight hour day. (R. 393-404.) Relying on this evidence, the ALJ found that Plaintiff could perform simple and routine sedentary work, in accordance with the physical limitations articulated by Dr. Fechner. (R. 281-82.)

In step five, the ALJ posed several hypothetical questions to a VE. (R. 280-81.) The hypothetical questions contained the RFC determination reached by the ALJ in step four. As stated above, this determination considered Plaintiff's obesity. Based on Plaintiff's RFC, the VE stated that 50,000 jobs existed in the national economy for someone with Plaintiff's limitations. (R. 280-81.) Accordingly, the ALJ satisfied the requirements of SSR 02-01p in his disability analysis.

**B.    The ALJ Properly Discredited Medical Evidence from Dr. Bernstein**

Plaintiff also contends that the ALJ improperly rejected medical evidence from non-treating source, Dr. Bernstein.[3] Dr. Bernstein, a consultive psychologist, explicitly stated that Plaintiff had limited ability to "follow simple directions and instructions and to perform simple rote tasks under supervision, make[] appropriate decisions, and perform complex tasks independently" due to her depression. (R. 212.)

When a conflict between evidence exists, the ALJ may choose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993). An ALJ cannot make speculative inferences from medical evidence. *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981). Although an ALJ is free to accept or reject evidence, he or she cannot mischaracterize it. *Carter v. Railroad Retirement Bd.*, 834 F.2d 62, 66 (3d Cir. 1987). The factors used in determining the weight of a medical opinion rendered by a non-treating source are: (1) the nature of the examining relationship; (2) the nature of the treating relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; and (5) the specialization of the physician offering the opinion. 20 C.F.R. §§ 404.1527(d)(6), 416.927(d)(6).

---

[3] A non-treating source is a physician, psychologist, or other acceptable medical source who has examined the claimant but does not have, or did not have, an ongoing treatment relationship with the claimant. The term includes an acceptable medical source who is a consultative examiner for the Commissioner, when the consultative examiner is not the claimant's treating source. 20 C.F.R. § 505.1502. Dr. Bernstein examined Plaintiff at the Commissioner's request, and did not have an on-going relationship with Plaintiff.

Here, the ALJ adequately weighed the opinion of Dr. Bernstein. The ALJ questioned the "supportablility" of Dr. Bernstein's opinion in light of the record as a whole. Specifically, the ALJ relied on evidence addressing the severity of Plaintiff's depression and contradictory statements found elsewhere in Dr. Bernstein's report. The ALJ concluded, based on Plaintiff's reluctance to treat her depression, that Plaintiff's impairment was not severe enough to impact her ability to following simple instructions and perform simple tasks to the extent stated by Dr. Bernstein. (R. 279.) Even though Plaintiff was first prescribed Paxil in 2000, she admitted to not taking the medication for fear of its side-effects in June 2001. (R. 197, 210.) Moreover, Plaintiff ignored the recommendation of her treating physician Dr. Praful Shah, who instructed her to see a psychiatrist in December 2003. Plaintiff only began receiving psychiatric treatment in January 2005. (R. 48, 336.)

In addition, the ALJ relied on evidence found in Dr. Bernstein's own report, indicating that Plaintiff's depression did not significantly inhibit her mental capacities. (R. 280.) Dr. Bernstein concluded that Plaintiff's memory, attention, and concentration were intact. (R. 212.) Plaintiff exhibited relevant, logical, and goal-directed thought processes, with no evidence of hallucinations, delusions, or paranoia. (*Id.*) Dr. Bernstein even recommended that Plaintiff receive vocational training, evidencing Dr. Bernstein's belief that Plaintiff could follow simple instructions and perform simple tasks. (R. 213.)

Other medical sources in the record, including records from Plaintiff's treating physicians, support the ALJ's conclusion with regards to Plaintiff's mental limitations. Dr. Nkwonta noted that Plaintiff did not exhibit a memory deficit and showed an appropriate level of intellectual functioning. (R. 216.) Treating physician, Dr. Shah, opined that Plaintiff's mental health complaints were "minor diagnoses" as opposed to her physical impairments. (R. 245.) Dr. Oti, another treating physician, observed that Plaintiff's social interaction, adaption, and other mental activities were unaffected. (R. 201.)

Plaintiff maintains that the ALJ improperly discredited Dr. Bernstein's opinion based on subjective inferences. Notably, Plaintiff argues that the ALJ inexplicitly categorized Dr. Bernstein's statement as "awkward" and possibly a "mistake," while further finding that Plaintiff's ability to take the bus to Dr. Bernstein's evaluation evidenced an ability to perform simple routine tasks. (R. 280.) He even injected his own subjective opinion with regards to Plaintiff's ability to follow simple tasks based on observations during the hearing. (R. 279-80.)

Plaintiff is correct–the ALJ made some subjective inferences to support his conclusion. Even so, he provided other bases, supported by substantial evidence, to discredit Dr. Bernstein's opinion. The ALJ did not reject Dr. Bernstein's opinion for "no

6

reason or for the wrong reason." As such, the ALJ's disability analysis is supported by substantial evidence.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**. An appropriate Order accompanies this Letter Opinion.

s/William J. Martini<br>
**William J. Martini, U.S.D.J.**